O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEHMAN COMMERCIAL PAPER INC., etc., <br><br> Plaintiff, <br><br> vs. <br><br> FIDELITY NATIONAL TITLE INSURANCE COMPANY, etc., et al., <br><br> Defendants. | CASE NO. SACV 12-570-JST (ANx) <br><br><br> **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 53)** |

1

I.  Introduction

On April 13, 2012, Plaintiff Lehman Commercial Paper Inc. ("Plaintiff" or "Lehman") filed its Complaint, asserting claims for "bad faith breach," breach of contract, and declaratory relief against Defendant Fidelity National Title Insurance Company ("Defendant" or "Fidelity"). (Compl., Doc. 1.) Before the Court is Defendant's Motion for Partial Summary Judgment ("Motion"). (Mot., Doc. 53.) Plaintiff opposed, and Defendant replied. (Opp'n, Doc. 61; Reply, Doc. 71.) The Court finds this matter appropriate for disposition without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Accordingly, the hearing set for January 4, 2013, at 2:30 p.m. is VACATED. Having considered the papers and the admissible evidence, the Court DENIES Defendant's Motion for Partial Summary Judgment.

II.  Background

This dispute arises out of title insurance policies Lehman obtained. On January 19, 2006, Lehman—in its capacity as administrative agent for various financial institutions (the "Investors")—funded a loan in the principal amount of $235 million (the "Loan") to LBREP-L-Suncal Master I LLC ("Suncal") and its subsidiaries LBREP/L-Suncal Summerwind Ranch, LLC ("Suncal Summerwind"), LBREP/L-Suncal McSweeny Farms, LLC ("Suncal McSweeny"), and LBREP/L Suncal McAllister Ranch, LLC ("Suncal McAllister") (collectively, the "Suncal Entities"). (Pl.'s Statement of Genuine Issues ("SGI") ¶ 1, Doc. 65.) The Purchase Agreement for the Summerwind property between Suncal Summerwind's predecessor in interest, as buyer, and Oak Valley Partners, L.P. ("Oak Valley"), as seller (the "Purchase Agreement"), contemplated the purchase of the property in two phases, Phase I and Phase II. (SGI ¶ 2.)

To secure repayment of the Loan, Suncal delivered to Lehman guarantees secured by first-in-priority deeds of trust that encumbered the properties (the "First Trust Deeds"). (Def.'s Statement of Undisputed Facts ("SUF") ¶ 3, Doc. 53-1.) Fidelity then issued to

Lehman a title insurance policy that insured the first Trust Deeds (the "First Policy"). (SUF ¶ 4.) At the time of the Phase II closing, Fidelity "allegedly" issued to Lehman a second title insurance policy (the "Second Policy") that insured an amendment to the First Trust Deeds (the "Amended Trust Deeds").[1] (SUF ¶ 5.)

Eventually, involuntary petitions for bankruptcy were filed against the Suncal entities; however, before those petitions were filed, numerous contractors, subcontractors, and other parties recorded mechanic's liens against the Suncal Properties. (SUF ¶ 7.) Some have filed lawsuits in California state court seeking to foreclose on those liens. (SGI ¶ 7.) Some of the lien claimants have asserted that the mechanic's lien claims are senior in priority to Lehman's First Trust Deed and/or the Amended Trust Deed. (*Id.*)

In response to Lehman's tender of the mechanic's lien claims, Fidelity and First American retained and paid the law firm of Loeb & Loeb to defend Lehman and to prosecute claims on Lehman's behalf under a reservation of rights. (SUF ¶ 10.) In March 2009, Oak Valley filed a Proof of Claim in the bankruptcy for Suncal Summerwind, case number 8:08-bk-15640-ES (the "Summerwind Bankruptcy"). In its Proof of Claim, Oak Valley made a claim for the Post-Closing Adjustment in the amount of $11,907,650 plus interest at 18%, for a total of $15,871,429 (the "Oak Valley Claim"). (SGI ¶ 11.) The Proof of Claim asserts that the claim is a "secured claim," referencing the Memorandum as "evidence of perfection."[2] (*Id.*)

In the Suncal bankruptcy, the Properties that secured the Loan were sold. (SUF ¶ 15.) Under the bankruptcy plan (the "Plan"), any claims of lien against the properties, including the Oak Valley Claim and the mechanic's lien claims, attached to the proceeds of the sale in their order of priority to the extent that such claims are senior or equal in

---

[1] Fidelity states it "allegedly" issued this second policy, yet it is unclear how an allegation can constitute an undisputed fact. Moreover, Fidelity attached a copy of a title-insurance policy in support of this "undisputed fact." (*See* Cheyne Decl. Ex. E, Doc. 53-5.)

[2] Lehman disputes that the Oak Valley's Proof of Claim asserts that its claim is senior in priority to Lehman's Amended Trust Deed. (*See* SGI ¶ 11.)

3

priority to the liens of the First Trust Deeds and/or the Amended Trust Deed.  (SUF ¶ 16.) The Plan authorized the trustee to establish and maintain reserves from the sale proceeds in order to permit interim distribution of the balance of the sale proceeds in accordance with the Plan.  Thereafter, the trustee filed a motion to establish reserves (the "Reserve Motion").  (SGI ¶ 17.)  The bankruptcy court ultimately approved the establishment of reserves for both the Oak Valley Claim and each of the mechanic's lien claims in agreement amounts as follows: (1) $19,952,122.06 for the Summerwind reserve, which includes $14,779,178 for the Oak Valley Claim, (2) $5,507,227.58 for the McSweeny reserve, and (3) $10,135,027.38 for the McAllister reserve.  (*Id.*)

In its objection to the Reserve Motion, Oak Valley asserted a vendor's lien for the Post-Closing Adjustment, stating: "Regardless of the terms of the purchase agreement or the subsequent documentation concerning the post-closing adjustment—which clearly demonstrate an intent to create a mortgage—Oak Valley is entitled to a vendor's lien by operation of law for the unpaid portion of the purchase price.  *See* Cal. Civ. C. § 3046."  (SGI ¶ 12.)  In response to Lehman's tender of the Oak Valley Claim, Fidelity and First American retained and paid Loeb & Loeb to defend Lehman's secured position under a reservation of rights.  (SUF ¶ 13.)

In recognition of the reserves that are being held by the Suncal bankruptcy court, and to develop a protocol for settlement of lien claims, Lehman, Fidelity, and First American entered into an Interim Funding Agreement under which Fidelity and First American have sole discretion to settle any of the mechanic's lien claims and the Oak Valley Claim, subject to Lehman's reasonable satisfaction.  (SUF ¶ 18.)  In addition to protecting Lehman's interests by prosecuting the mechanic's lien claims and the Oak Valley Claim, Fidelity has been funding settlements of claims.  (SUF ¶¶ 19, 20.)  As of August 1, 2012, Fidelity has made payments totaling $900,000 to settle certain of the mechanic's lien claims, and it has disbursed more than $1,356,000 for legal fees and costs

on behalf of Lehman in defending and prosecuting claims in connection with the mechanic's lien claims and the Oak Valley Claim. (SUF ¶¶ 14, 20.)

In September 2012, the bankruptcy court granted a motion for summary judgment in favor of Lehman as to the Oak Valley Claim. (SUF ¶ 21.)[3]

### III. Legal Standard

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][4] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to

---

[3] Lehman asserts that Oak Valley has appealed this judgment. (*See* SGI ¶ 21.)

[4] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

establish the elements of its claims, the Court must grant the motion. S*ee In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

## IV. Discussion

Lehman's Complaint asserts, *inter alia*, two claims for bad-faith breach based on Fidelity's reservation of rights: one involving the Oak Valley Claim, and the other involving the mechanic's lien claims. (*See* Compl., Doc. 1.) Fidelity moves for summary judgment on both of the bad faith breach claims on the basis that those claims fail as a matter of law because Fidelity has been providing "full policy benefits" by defending Lehman in the underlying litigation and funding settlements. (*See* Mot. at 9-14.) Because this is a diversity action, the Court applies California substantive law. *See Torre v. Brickey*, 278 F.3d 917, 919 (9th Cir. 2002) (per curium).

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. . . . This principle is applicable to policies of insurance." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958). A breach of this implied covenant constitutes a tort, and there are two elements to such a breach: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). Moreover, the "precise nature and extent of the duty imposed by [the] implied promise will depend on the contractual purposes." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979).

It is undisputed that Fidelity has been defending Lehman and settling claims in the underlying litigation, (*see* SUF ¶¶ 19, 20), and on that basis Fidelity argues that it has not withheld benefits due under the policy and therefore cannot be liable as a matter of law for

bad faith breach. Fidelity further argues that its defense of Lehman under a reservation of rights cannot constitute a bad faith breach of the insurance contract. (*See* Mot. at 11-14.)

First, Fidelity's contention that a bad-faith-breach claim must be predicated upon a breach of the insurance contract is erroneous as a matter of California substantive law, and at least one California court of appeal has rejected this contention. In *Schwartz v. State Farm Fire and Casualty Co.*, 88 Cal. App. 4th 1329 (2001), an insurer made this argument relying on cases that "say there can be no breach of the covenant of good faith and fair dealing if no benefits are due under the policy." *Id.* at 1339. The court of appeal rejected that contention, however, explaining that "[t]hose cases [] show that the principle has been applied *only* when there is no coverage, *and no potential coverage*, under the policy." *Id.*; *see also Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235-36 (2008) (citing *Schwartz* for the proposition that breach of an express contract term is not a prerequisite to an action for breach of the implied covenant of good faith and fair dealing). Fidelity does not argue that that there is no "potential coverage" in this case. Rather, it has argued that it does not yet have sufficient information to make a coverage determination. (*See* Mot. at 11, n.5 ("Fidelity has reserved rights based on, among other things, [Lehman's] failure to cooperate with Fidelity in providing necessary information to evaluate [Lehman's] coverage claim.").)

More importantly, an insurer *can* be held liable for bad-faith breach even when it is indemnifying its insured. Both parties rely on *Dalrymple v. United Services Automobile Association*, 40 Cal. App. 4th 497 (1995), as being on point if not dispositive, and the Court agrees. (*See* Opp'n at 14-16; Reply at 9-10.) The liability insurer in *Dalrymple* sought a declaratory judgment that a renter's insurance policy it issued did not provide coverage for its insured's gunshot that injured a police officer, and the insurer lost at trial. *Id.* at 506-07. Based in part on the insurer's declaratory relief action, the insured brought its own lawsuit, asserting a claim for, *inter alia*, bad-faith breach. In the second action, the trial court granted the insurer's nonsuit motion on the insured's breach of contract claim

1  but denied the insurer's nonsuit motion on the insured's bad-faith-breach claim. *Id.* at 508.
2  The insurer appealed, contending that the nonsuit on the contract claim should have
3  resolved the bad-faith-breach claim as well. *Id.* at 510. The court of appeal rejected that
4  argument: "It is at least arguable that pursuing a declaratory relief action regarding
5  coverage could be done for reasons indicating bad faith may be present: e.g., if there were
6  no proper cause to dispute coverage, *and* if more than an erroneous interpretation of a
7  policy (e.g., a willfully misguided one) were concerned." *Id.* at 515.

8        The *Dalrymple* court also quoted from a leading California insurance treatise:
9  "There may be cases in which the insurer's delay in paying the claim or other misconduct
10 causes special harm to the insured even though the claim is ultimately paid or settled.
11 Such payment fulfills the insurer's contractual obligations. However, under appropriate
12 circumstances, tort liability may still be imposed for the insurer's misconduct apart from
13 performance of its contract obligation." *Id.* (quoting Kaufman et al., Cal. Practice Guide:
14 Ins. Litig. (The Rutter Group 1995) ¶12:812). Dalrymple, the insured, contended that the
15 policy benefits "were not paid in a sufficiently timely manner, so that benefits were
16 effectively 'withheld' during the period of time representing the declaratory relief
17 litigation and its aftermath." *Id.* at 514; *see also Schwartz*, 88 Cal. App. 4th at 1339 ("even
18 an insurer that pays the full limits of its policy may be liable for breach of the implied
19 covenant, if improper claims handling causes detriment to the insured").

20       These authorities reveal that indemnification and defense of an insured alone do not
21 foreclose—*as a matter of law*—a claim for bad-faith-breach of an insurance contract. Yet
22 Fidelity has "hung its hat" on this contention: "The fact that Fidelity has been prosecuting,
23 defending and settling claims on [Lehman's] behalf is not merely significant, *it is*
24 *determinative*." (Mot. at 6 (emphasis added).) As explained above, it is not. An insurer
25 could engage in *other* conduct—such as unreasonably refusing to determine coverage—
26 that would give rise to tort liability even as it is discharging its contractual obligations.
27
28

Lehman puts forth intangible benefits it has allegedly been deprived of through Fidelity's refusal to determine coverage, and Fidelity disputes whether those benefits are legally cognizable. (*See* Opp'n at 16-17; Reply at 8-12.) At this stage, however, Fidelity—as the moving party—bears the initial burden of demonstrating that there are no disputed, material facts and that it is entitled to judgment as a matter of law, even though Lehman will ultimately bear the burden at trial on its claims. As explained above, it has not carried its initial burden, because bad-faith-breach claims are not categorically foreclosed as a matter of law in situations where an insurer is defending and settling. Thus, the nonmoving plaintiff does not need to come forth with its own evidence, and the Court therefore does not need to reach the issue of benefits Lehman has allegedly been deprived of because coverage has not been finally determined.

The Ninth Circuit's decision in *James River Insurance Company v. Hebert Schenk, P.C.*, 523 F.3d 915 (9th Cir. 2008), sets forth the relevant summary judgment burden. In that case, the defendant law firm's malpractice insurer brought a declaratory action, seeking a declaration that a malpractice suit brought against the insured was not covered under the policy it had issued. The insured counterclaimed for, *inter alia*, bad-faith breach. The Ninth Circuit reversed summary judgment for the insurer, explaining: "James River [the insurer] could satisfy its initial burden of production under Rule 56 either by introducing evidence negating an essential element of the counterclaim or by showing that Hebert Schenk [the insured] does not have enough evidence of an essential element of [bad faith] . . . to carry its ultimate burden of persuasion at trial." *Id.* at 923 (internal quotation marks omitted) (third brackets in original). "James River did neither. Its motion sought summary judgment only to the extent [that the counterclaims] are based on the allegation that James River failed to provide a defense in the underlying litigation." *Id.* at 924 (internal quotation marks omitted). "Hebert Schenk's counterclaim of bad faith, however, does not rely upon the alleged failure to provide a defense. It is clear to us that James River could both arrange for Hebert Schenk's defense under a reservation of rights and

also, for example, commit bad faith by failing to investigate the claim prior to seeking declaratory judgment . . . ." *Id.* "Because James River did not satisfy its initial burden of production, Hebert Schenk was not required to demonstrate a genuine issue of material fact." *Id.* (citing *Celotex*, 477 U.S. at 323).

As explained above, under California law a bad-faith-breach claim will still lie even if the insurer is providing a defense. Fidelity moved, however, on the sole basis that it has, and is, providing a defense. Fidelity has thus failed to "satisfy its initial burden of production" as the party moving for summary judgment, and Lehman is accordingly "not required to demonstrate a genuine issue of material fact." *Id.*

## V.     Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion for Partial Summary Judgment.

DATED: January 2, 2013

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE